The next matter, No. 162112, National Federation of the Blind et al. v. Container Store, Inc.  May it please the Court, Greg Hurley on behalf of Defendant's Appellants. Your Honor, I'd like to reserve five minutes for rebuttal. My predecessor told me that five minutes was always too much. We're here to ask you to review the denial of our motion to compel arbitration for four of the plaintiffs and a case against my client. Three of those plaintiffs enrolled in our affinity program at the store in person at the cashier. One of the plaintiffs enrolled online. The plaintiff who enrolled online's name was Lineback. Mr. Lineback went online, he enrolled, he clicked through a click-wrap agreement, and in doing so agreed to the same terms of conditions as the three in-store plaintiffs would have seen when they went to the store to enroll in the store. The three in-store plaintiffs, the way they would enroll is they would go to the cashier, the cashier would make them an offer. Would you like to enroll in our program here, our affinity program, for certain perks and benefits? Those plaintiffs would then say yes, and to enroll they had to give at least their email address and their name. Some gave their email address and their name and their phone number. How were they supposed to know in the store based upon the information communicated to them that they were even engaging in contract formation? Well, what they have is an offer. Would you like to engage in our program? The response is yes, and then beyond yes to engage in the program, they have to give an email address and a name. So at that point they have an agreement. Now, they have an agreement to engage in a program. They're not told that there are any terms and conditions that apply. That's like saying, you know, would you like me to send you free coupons when we announce them? Sure. We have an agreement, but the agreement doesn't say there are lots of conditions that if I ever have any kind of problem with you, we're going to arbitrate it. Anything like that. The terms are available to them in a couple of ways. They may be available, but they're never even told that there are terms. There's no proof, so the district court found, that they were even told that there were any terms and conditions incident to this so-called membership. Well, what's struggling, where we struggle with that is all of the many opinions that find by the click wrap agreements, where you go online and you enroll, and by clicking through, there's nothing in there that necessarily directs you to those terms and conditions. There is. There's usually something that says terms and conditions that you click. And when you click it, it takes you to the terms and conditions. There's nothing that happened in the store that said anything that this is contract formation and that these are the 100 page terms that you're agreeing to. Except for, as a result of engaging in the program, the first thing that was done, because this is based on email, was an email went to them saying welcome to the program. It shows the first transaction for which they're credited, so they're already participated in the program. And it has a link to terms and conditions. It also allows them to cancel the program at that point. And they receive not just the So I haven't heard him join the distinction between Lineback, the online plaintiff that clicked through and agreed to the terms and conditions, but contends he never read them and was unaware of them. In that format, in the secondary format where they go into the store, they enter into the agreement, they then sent the agreement, the link to it, the same link that Lineback saw, with the same terms and conditions. What evidence is there that they ever did anything with response to these subsequent emails? I'm sorry, which the in-store plaintiffs? Yeah. There's nothing I've seen in the record that anyone ever did anything in response to these subsequent emails. You're correct. The record is empty on that. All right. So that can't be contract formation. An empty record. We all receive plenty of solicitations by email, regular mail, etc. that may contain terms and conditions. We're not bound by them unless we do something affirmatively to accept them. And we contend that affirmative action is the saying, yes, I want to join all of these plaintiffs. But the yes, I want to join was before they knew they had any terms, that you had any terms and conditions. In other words, contract ratification, there's nothing in the evidence to suggest that they did anything in which we could infer that they ratified what they did in the store. I think they did by virtue of not accepting the email, well, having an email which was sent to them, undisputed was sent to them. It's also undisputed. So what's the rule of law? I send you an email. If you somehow don't formally reject it, and I'm not sure how you formally reject an email, maybe you refuse to open it. But I send you an email, and you're therefore bound to whatever terms and conditions I attach to my email, despite the fact that you never acknowledge it, you never indicate affirmatively your acceptance, anything like that? I don't think that would be the rule of law, but I think in a circumstance where the initiation was, yes, I want to enroll in your program, here is my email address, here is my name, here is my phone number. I think at that point you have the agreement. It's then ratified by the fact that it's a following email. Going back to Judge Seligman's question, how do you know you're not just signing up to get coupons, as opposed to being a contract participant in an onerous contract? You know when you get the ratification, when you get the email. And it's really no different than Mr. Linebacker, I'm sorry, Ms. Linebacker signing up online, where they don't click through the terms and conditions until they accept. At that point, if they're unhappy with the terms and conditions, they can choose to abandon the program, to withdraw from the program. Once again, I see a difference because when they sign up online, the information is there available to them to read. The stuff that's happening in the store is nothing compared to what is available to them when they sign up online. But the record is clear. The information is there available to them at the store. So if they're sighted individuals... But they don't know that there is any such information. No one tells them that. Okay, no one reads them the terms... No one tells them that there are any terms and conditions. It's not a question of reading it to them. There's not a word in the record that anyone at the time they signed up in the store was told that there was any term or condition applicable to membership in the loyalty program. Except in the record we have the fact that there is a brochure that can be provided to the, and would be provided to the shoppers as well as... And what evidence is there that this brochure was given to these plaintiffs? There is no evidence that they requested it. There is no evidence that it was given to them. There is no evidence it wasn't given to them. The evidence is clear, however... What is the evidence if they were told that it was available? That's something that you don't know is available. They were told that the program materials were available. The sales associates by virtue of our training manual were to offer them to the in-store claimants. Well, is your argument simply that communication is to be assumed under the sort of rule that the store employees follow their usual and customary practice? Yes, Your Honor. Okay. But didn't the district court examine the usual and customary practice and found it was insufficient? I... Found that the usual and customary practice didn't extend to telling people in the store that there were terms and conditions. I didn't, I don't remember that, Your Honor. Well, I read it over just yesterday in the district, in Judge Gordon's opinion. That was part of the finding. Excuse me? That was part of the finding. I don't remember the court saying exactly that. I do remember the court saying that there was an absence of evidence as to whether these plaintiffs requested more information on this, on the program, or whether it was offered. And I would agree with that. But the one cornerstone to this is none of these plaintiffs dispute that they wanted to enroll in this program. None of them dispute that they continue to be enrolled in this program. To this day. None of them, they don't recall receiving emails, but none of them say, that we did not receive emails on this. So far, you've been arguing against Judge Gordon's holding that there is no sufficient proof of contract formation. Yes. Do you care to say anything on the issue of whether contract formation, if it's a disputed issue, was properly for the court rather than for the arbitrator? Well, I wouldn't phrase it that way, Your Honor. I would say that once we have an agreement, an offer, and an acceptance, and then ratification. But don't, that's not the question I asked you. I'm trying to get past the fact. The district court has held that there is no sufficient proof in the record from which we can find that an agreement has been formed. So therefore, the issue of contract formation has got to be litigated. All right? Do you agree that that issue was properly for the court, not for the arbitrator? First, to be clear, the district court made that final for the three in-store plaintiffs. Yes, I understand that. Do you agree that that's for the court, not for the arbitrator? There are four plaintiffs here. Forget about the fourth one for now. He has it right for the three. Do you agree that the issue of contract formation is properly for the court and not for the arbitrator? I'm just trying to narrow down what we've got to decide here. It depends on at what point. If your position, if your conclusion is that the offer of acceptance was not a form of an agreement, then the original question of formation, the actual basis of the formation, as this court's opinions have represented, is a question for the court. Oh, that's fine. That answers my question. Now tell us about the in-store plaintiff. No, the linebacker, the at-home plaintiff. The at-home plaintiff. I understand what the court found. Would you let me ask my question? Yes. All right. I would like to know, the court found that the contract had been formed as the linebacker, or there was evidence to that effect, but that it was unenforceable because of, because the contract that had been formed was both illusory and unconscionable. The question I want to ask you is, are those issues, illusoriness and unconscionability, in the facts and circumstances of linebacker's claim, for the court or for the arbitrator? They are absolutely for the arbitrator. Hornbrook U.S. Supreme Court Law, Buckeye. You have an agreement as the magistrate found, as the district court found. Now that question of whether the agreement, this is a challenge to the entire agreement. This is not just a challenge to the arbitration provision. That question must go to the arbiter. And what's so frustrating for the defendants here is all of these questions should go to the arbitrator. The arbitrator can find that the provisions itself, the contract itself, were illusory and return this to the district court. The arbitrator can find that they're unconscionable and return this to the district court. The arbitrator can find that the fees are incorrect and return it. The arbitrator can find that the form is incorrect. So depriving the arbitrator of this seems inappropriate. Thank you, Your Honor. Thank you. Good morning. May it please the court. Carly Gilbride on behalf of the appellees. Counsel, may I ask you to start where we left off with your brother? And that is with respect to linebacker. If we accept the district court's view that there is sufficient proof of contract formation with respect to linebacker, but that the dispositive issues in his case are illusoriness and unconscionability, why shouldn't the district court have left those issues for the arbitrator? The illusoriness issue also goes to contract formation, because whether it's analyzed under Massachusetts law or Texas law, which are the only two states' law that could potentially apply here, not California or New York law, as the defendant cites in its brief. Under either Massachusetts or Texas law, the question is whether there was consideration. If there is an illusory promise, a promise that one party can revoke or modify at any time, then there is no consideration. And that is the case with respect to the container store's agreement to arbitrate here. The container store says that the change of terms provision in the terms and conditions says, we reserve the right at our discretion to change, modify, cancel, add, or remove any or all portions of these terms at any time. And there's another provision further down in the terms and conditions that says, without limitation, we reserve the right to terminate, change, limit, modify, or cancel any provisions at any time with or without notice. So there's no consideration, because not only can the arbitration provision be revoked at any time, there's no other provision in the contract that the plaintiffs here could rely on, that Janine Lineback or any of the other plaintiffs or any other customer of the container store, for that matter, could rely on as consideration for that agreement to arbitrate. And that means that if you look at the Cary versus 24-hour fitness case out of the Fifth Circuit, which analyzed this issue under Texas law, the problem isn't whether or not notice is provided here. In one provision, there's some ambiguity in the contract. In one place, it says that they will provide notice on their website. In another provision, it says they can make any changes or eliminate any terms with no notice. But it doesn't matter whether there's notice. It also doesn't matter as the container store has maintained in its brief that the plaintiffs here had an opportunity to cancel, because canceling their agreement to the terms doesn't change the fact that the container store has the ability to change the terms partway through the game and even retroactively. That's what the Fifth Circuit held to be dispositive in Cary versus 24-hour fitness. I understand that, but to go back to my original question, the Supreme Court has told us in the Prima Paint line of cases that questions as to the validity of the agreement usually go to the arbitrator, not to the court. And I'm struggling with the notion of whether a claim that a contract is illusory is a claim that goes to its validity or goes to its formation. And what is the best authority you can give me on that narrow question? Whether a contract is illusory is a question of whether or not there is consideration. Well, I understand you look at it that way. But you can also look at it and say whether or not a contract is valid depends on whether or not it's illusory. And I have got to believe that courts have, that we're not on virgin territory, that courts have grappled with this question. And what I want is the best authority you can give me that says illusoriness is an issue that goes to formation rather than validity. So under Massachusetts law, it would be the graphic arts case that we cited at page, I believe, 43 of our brief. Under Texas law, I would again point you to Carey v. 24-Hour Fitness. That's the Fifth Circuit case. Yes, or a number of cases cited within that case that were Texas cases. And the reason that this is a question of formation, according to the Supreme Court in Granite Rock, is that it goes to whether an agreement to arbitrate was formed. So there's two really answers to your question, Judge Salia. First of all, it would be a question of formation as to the contract as a whole, because the entire contract would fail for lack of consideration. But even if it goes, so that would be Granite Rock, right? that the court must resolve any doubts, the court, not an arbitrator, must resolve any doubts about whether the specific agreement to arbitrate exists. And even if the doubt in question, the contract formation question, such as the issue of whether or not the container store met its burden of showing that any of the in-store plaintiffs, Mika Pakala, Lisa Irving, or Arthur Jacobs, had constructive notice of the arbitration clause, even though that goes to the contract as a whole, which is what you were speaking with opposing counsel about, that still calls into question whether the specific arbitration clause was ever formed. And just because the contract formation question sweeps more broadly and goes to the formation of the entire contract, that doesn't change the fact that figuring out whether or not the agreement to arbitrate was formed will always include the question of contract formation. So, in other words, Granite Rock provides a threshold question that the court has to resolve anything going to whether the contract as a whole was formed. If you get past that, then you enter into the land of prima pie where a defense to the contract, whether it's a defense under Section 2 of the FAA based on duress, based on unconscionability, based on fraud, and when those questions, those defenses, those challenges to a contract's validity or enforceability go directly to the arbitration division, then they are still for the court to decide under prima pae and Buckeye. If those validity or enforceability challenges go to the contract as a whole, then therefore the arbitrator. That's what prima pae said, and that's what this court maintained in Farnsworth where it was dealing with a validity question of whether or not the contract was formed under duress. So the reason that illusoriness is for the court either way is that either it's a question of formation as to whether or not there was consideration, whether or not a one party, the container store in this case, who can basically say what the Massachusetts court said and it's a 1941 case cited in the graphic artist's case about the sale of milk. And it said, we agree to buy as much milk as we desire. Basically there's no definite terms there. It says we'll do it if we feel like it. That's what this entire terms of use for the loyalty program looks like. We'll offer you these benefits if we feel like it, but if at some point we decide we don't want to do it anymore, without any notice we can pull them back, we can withdraw, we can change any of these terms. That is not a contract. That is an illusory promise. It's a promise that actually binds one party to do nothing. And so when you don't have consideration, you don't have one of the essential elements of contract formation, you don't ever get to prima pae. Because Granite Rock says if there's a doubt that calls into question, any issue that calls into question the formation of the specific arbitration clause, that always goes to the court. Here we have an illusory contract that contains an arbitration clause. If the entire contract is illusory, the court has to assess that because that goes to the question of whether the arbitration clause contained in that contract had consideration. However, if you don't agree with that argument, this question is that illusoriness and unconscionability still goes to the arbitrator because the arguments were specifically directed to the arbitration clause under prima pae. There's no argument here that there's some other term or condition that the container store wants to enforce, but plaintiffs say that it's unconscionable or plaintiffs say that it's illusory. This entire argument, the entire motion before the district court and that we're now here on appeal has to do with the defendants trying to enforce its arbitration provision. And when you look at specifically the arguments with respect to lack of notice, what Mr. Pecala and Ms. Irving and Mr. Jacobs said when they said that they had no idea this clause was being offered to them, they don't talk about any other terms in the contract. They say no one ever presented information about arbitration to me. I never agreed that I was going to arbitrate future claims. That's what this dispute is about. Let me just ask you something. I'm trying to find out what the greater issue is that is at stake here because this arose out of the organization's concern that machines were not available in these container stores such that visually impaired customers could use and read and enter into agreements like non-visually impaired people. According to the defendant, they've collected that. And that they have put those updated machinery in their stores. So I'm trying to figure out what this case at heart is still about. Well, whether or not the container store has remediated any of the barriers at the point of sale is something that the parties are disputing. There's a lot of discovery that was going on before the district court about that, before the district court stayed all those proceedings pending this appeal. And so it certainly hasn't been agreed that that's the defendant's position that they've remedied the barriers. Plaintiffs disagree with that. And that's something that if this court remands back to the district court to proceed on the merits, we'll try to get to the bottom of what exactly defendant's obligations are and what do they still need to do in order to give Mr. Pecala, Ms. Irving and all of the other members of the National Federation of the Blind equal access to the benefits and facilities in their stores. That is what this case is about. In any event, there are also state law claims for damages for past conduct embodied in the suit, aren't there? That's correct, Your Honor. And that's what makes it ironic that the container store is trying to benefit from its own noncompliance with those federal and state laws by trying to hold the plaintiffs to the terms of a contract to which they had no notice. And that was the entire thrust of their opening brief was that, you know, this happened at the point of sale even though, as Your Honor's pointed out, there's nothing in the record about what the cashiers ever said, what the plaintiffs knew about at the time of point of sale. There's a complete absence of any reasonable, you know, evidence, which is the container store's burden to prove that it reasonably communicated the terms of this offer and that at the time of point of sale, the plaintiffs unambiguously manifested a sense that they knew that the contract was being offered. And that's relevant to what happened afterwards because container store keeps talking about, well, there was this email. First of all, the email isn't in the record. We have no idea what the email looks like. We have no idea, as Magistrate Judge Kelly said, at page 17, footnote 9, we don't know whether there were a lot of links in the email, if there were just a couple of links in the email, whether this link to terms and conditions was buried in a lot of other information. And that distinguishes all of the cases that defendants cite in their reply brief. They have a slew of cases about Hill v. Gateway, these other district court and state court cases where terms were sent in the mail to people. And one case that involved terms that were sent by email, a case out of the District of Connecticut involving DirecTV. In all of those cases, the full terms of the proposed contract were included either in a print booklet, such as in the Hill v. Gateway case, in the mail, such as in the Edwards v. Macy's case involving a credit protection plan, or in the DirecTV case with the email, there was an extensive record about the transcript of the phone conversation, what the plaintiffs were told over the phone, that the entire text of the contract was provided in the email. We don't have anything like this here. All we know is that there was an email that the plaintiffs received at some point after they enrolled, and that that included a link to the terms and conditions. So by inference, we can assume that the full terms and conditions were not contained in the email, because the declaration says that there was a link to them. And that, again, just to compare this to Campbell v. General Dynamics, another case involving notice by email of an arbitration provision, that email did disclose all the terms, but still was not found to offer the minimally sufficient notice necessary when a waiver of federal statutory claims are at issue. The same federal statutory discrimination claims are at issue here, and because no adequate notice was given, and because the clause was elucidated. For either or both of those reasons, the District Court opinion should be affirmed. Thank you. Thank you, Your Honor. Two points, if you'll allow me. First, we keep talking about the Fifth Circuit and Texas law. None of these plaintiffs are residents of the Fifth Circuit? None of these plaintiffs shopped in Texas for the Fifth Circuit? The only reason Texas law comes up is because it's in the agreement. So right now, we are in the agreement. And once we're in the agreement under the U.S. Supreme Court's Buckeye opinion, it goes to the arbitrator, because it's to the entire agreement. Just as the form selection clause is in there, so the fee claims in there, those are different than the arbitration. So this is clearly a challenge to the entire agreement. Second, I want to give you, for your consideration, changing the facts slightly as to why we think this is a slippery slope. Let's assume that these three in-store plaintiffs, instead of being blind, have English as a second language. They can speak English, they can understand English, but they're illiterate in reading English. So they come and they enter the same transaction. Would you like to join our program? Yes, I would like to join your program. What is your email address? What is your name? What is your phone number? It's given. Now, the kiosk they have in front of them has the provisions, but they're only in English. They can see the kiosk. They know there is something there, but they can't read it. They have no knowledge of it. This is the same readability issue. This is the slope we start to go down. And this is why we have those cases after cases we've submitted to you as to why readability is not a defense to these provisions. And it goes beyond that. So let's put it in the context of the ADA. There's many types of issues that come up under the ADA, not just blind and mobility-impaired. You also have people with cognitive disabilities, mental capacity issues, dyslexia. Someone who is severely dyslexic would have the same argument. In following this path down, you are beginning to gut the FAA. Thank you, Your Honors.